21 F.3d 428
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
John BRAY, Defendant-Appellant.
 No. 93-3378.
 United States Court of Appeals, Sixth Circuit.
 March 23, 1994.
 
 Before: GUY and SILER, Circuit Judges; and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant John Bray was charged in a four-count indictment with aiding and abetting the distribution of cocaine base, in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2. A jury found him guilty on three of these counts. He appeals, arguing that the district court erred in denying his motion to suppress evidence. He also appeals three sentencing decisions: (1) a two-point enhancement for possession of a gun, pursuant to U.S.S.G. Sec. 2D1.1(b)(1); (2) a two-point enhancement for obstruction of justice, pursuant to U.S.S.G. Sec. 3C1.1; and (3) the failure to grant him a two-point downward adjustment for being a minor participant, pursuant to U.S.S.G. Sec. 3B1.2(b).
 
 
 2
 During the summer of 1992, the Cleveland Street Gang Task Force initiated an investigation of Wayne Whitmore for selling cocaine. During four of five undercover buys, Defendant John Bray accompanied Whitmore. During the first buy (July 9, 1992), Whitmore introduced someone as his little brother "J"--Special Agent Patricia Crumbley, the undercover officer who dealt with Whitmore, subsequently identified this individual as John Bray. During the second buy (July 13, 1992), Bray tossed a bag of cocaine to Agent Crumbley. In the presence of Bray, Whitmore brandished a pistol which he claimed to use for the purpose of exercising authority. During the fourth transaction (July 23, 1992), Bray exited the car from which he and Whitmore arrived and entered a McDonald's while Whitmore sold drugs to Patricia Crumbley--Agent Larry Brock testified that Bray acted as a lookout while the transaction was being consummated. During the fifth and final transaction (July 24, 1992), after a "missed" sale, Whitmore was arrested returning to the car Bray was driving. Bray was removed from the car by Sergeant Dennis Gunsch and detained in a police vehicle. After a positive identification by Agent Brock, Bray was brought to the Task Force office where he was questioned, positively identified by Agent Crumbley, and charged with the aforementioned offenses. All other relevant facts will be discussed at the appropriate point in this opinion.
 
 
 3
 Bray claims there was no probable cause to arrest him and therefore any evidence derived from the arrest as well as any post-arrest statements[1] should have been suppressed. He bases this contention on the paucity of information implicating Bray that was available to Sergeant Gunsch, the arresting officer, when Bray was arrested. Bray calls our attention to the cross-examination of Sergeant Gunsch which reveals that Gunsch knew that Whitmore had an accomplice named John Bray, but did not know that John Bray was the individual he arrested. He further calls our attention to the fact that Agent Brock, the only officer present that could identify Whitmore's accomplice, confirmed his suspicions only after Bray had been placed in police custody. Bray argues that it was not until he had been taken to the Task Force office, where Special Agent Crumbley positively identified photographs of Bray, that there was some measure of probable cause to believe that Bray may have been connected to Whitmore's drug trafficking.
 
 
 4
 The government counters with a litany of information justifying probable cause. Upon closer review of the record, much of this information was not known by Sergeant Gunsch at the time he "arrested" Bray. The question thus boils down to whether Sergeant Gunsch had probable cause to arrest John Bray based on the information available to Gunsch at the time of Bray's detention--which we hold to be an arrest, invoking Bray's Fourth Amendment protections. See Terry v. Ohio, 392 U.S. 1, 16 (1968) ("It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person.").
 
 
 5
 When Bray was removed from his car and detained in the police car, Sergeant Gunsch: (1) knew the individual being detained had driven Whitmore to the predetermined meeting place and was about to drive Whitmore from the drug transaction;[2] (2) knew Whitmore had an accomplice named John Bray, who had been involved in several of Whitmore's prior drug sales to Crumbley, including one in which Bray actually presented the drugs to Crumbley; (3) saw that the accomplice was sitting next to both a 9mm ammunition clip left by Whitmore in the car and a pager that had been traced to John Bray; and (4) had discussed the role of Whitmore's accomplice with Agent Brock prior to the events of July 24 and had decided that, based on the accomplice's participation, there was probable cause to arrest John Bray.[3]
 
 
 6
 Based on the aforementioned facts, we find that the district court committed no clear error, United States v. Sangineto-Miranda, 859 F.2d 1501, 1508 (6th Cir.1988), in denying John Bray's motion to suppress both evidence obtained and statements made subsequent to his arrest. The decision of the district court with regard to this matter is therefore affirmed.
 
 
 7
 Bray argues that the district court erred in several regards in enhancing his base offense level two points for the possession of a gun, pursuant to U.S.S.G. Sec. 2D1.1(b)(1). First, no conspiracy was alleged and, even if it had been, there was no showing that the possession of the gun was foreseeable to Bray. Second, there was no showing of scienter or knowledge attributable to Bray that Whitmore had the gun. Finally, Bray argues that the court's summary disposition of this issue was insufficient as the district court judge failed to indicate the factors he relied upon in applying Sec. 2D1.1(b)(1), other than the vague statement that the district court judge "remembered the testimony" at trial. (Sent. Tr. at 38).
 
 
 8
 The government counters Bray's arguments by correctly pointing out that a conspiracy need not be charged for this enhancement to be implicated. U.S.S.G. Sec. 1B1.3(a)(1)(B). Furthermore, Bray need not have known that Whitmore possessed a firearm during the commission of a felony. According to United States v. Sanchez, 928 F.2d 1450, 1459-60 (6th Cir.1991), the "reasonably foreseeable" possession of a firearm by a co-defendant in furtherance of joint criminal activity will result in the two-point enhancement.
 
 
 9
 With regard to whether it was reasonably foreseeable that Whitmore carried the firearm during perpetration of the felony, it was clearly established during the trial that Bray knew that Whitmore carried a pistol as Whitmore brandished the weapon in front of Bray during one of the undercover transactions. In addition, an ammunition clip was found in the driver's area of the vehicle within view of Bray when he was arrested.
 
 
 10
 Considering that the enhancement is to be applied "unless it is clearly improbable that the weapon was connected with the offense," U.S.S.G. Sec. 2D1.1, comment. (n. 3), it is difficult to conceive of the district court as having clearly erred in this regard. We hold that the district judge's findings were both sufficient and not, in any way, erroneous, and we affirm this two-level enhancement.
 
 
 11
 Bray claims that his sentence should not have been enhanced for obstruction of justice, pursuant to U.S.S.G. Sec. 3C1.1, because of statements he made to a confidential informant threatening harm to Agent Patricia Crumbley. He denies making any threats, and claims that hearsay evidence provided by an unreliable government informant is insufficient to support the requisite preponderance of the evidence standard. United States v. Hoffman, 982 F.2d 187, 191-92 (6th Cir.1992).
 
 
 12
 According to testimony at trial, Bray tried to find out Crumbley's home address by asking the confidential informant "where the whore (Crumbley) lives." He also told the informant that he would "cap that bitch" and "have his boys do a drive by"--evidencing a threat to kill in street vernacular. The confidential informant reported these threats to another officer who reduced them to writing and informed Crumbley. Crumbley testified that she was upset by the threats, and was forced to take extra safety precautions.
 
 
 13
 U.S.S.G. Sec. 3C1.1 provides that: "[i]f the defendant willfully obstructed, or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." Application Note 3 spells out a non-exhaustive list of examples of conduct that will trigger this provision. Note 3(a) provides that "threatening, intimidating, or otherwise unlawfully influencing a ... witness, ... directly or indirectly, or attempting to do so" is one type of conduct that will trigger the two-level obstruction of justice enhancement.
 
 
 14
 Facts supporting the obstruction of justice enhancement must be proved by a preponderance of the evidence, United States v. Hoffman, 982 F.2d 187, 191-92 (6th Cir.1992), and a district court's ruling on disputed facts will not be reversed unless clearly erroneous. United States v. Sivils, 960 F.2d 587, 596 (6th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 130 (1992); United States v. Williams, 940 F.2d 176, 181 (6th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 666 (1991).
 
 
 15
 The district court is justified in relying on hearsay testimony during sentencing, provided there are some "minimal indicia of reliability." United States v. Herrara, 928 F.2d 769, 773-74 (6th Cir.1991), quoting United States v. Smith, 887 F.2d 104, 108 (6th Cir.1989). Considering that the informant in this case had, according to Crumbley's testimony, been used by Patricia Crumbley on numerous previous occasions and had proven reliable on all of these, the district court's finding that the informant's statements were reliable and therefore could be taken into consideration was far from clear error.
 
 
 16
 Express threats to murder a police officer will not be taken lightly. Bray knew, when he threatened to kill Crumbley, that, at the very least, Crumbley and the confidential informant knew each other--therefore it was not unreasonable for him to assume that the informant might convey the death threat. Furthermore, it is the purpose of this provision to punish an individual who intimidates a prospective witness--these statements had such an affect, as not only was Patricia Crumbley, according to her testimony, afraid for her life, but she was forced to take extra safety precautions to protect herself. We refuse to allow these threats to go unpunished and we affirm the decision of the district court.
 
 
 17
 United States Sentencing Guidelines Section 3B1.2(b) allows a two-point reduction for a minor participant in a criminal scheme. This determination is heavily dependent upon the facts, and the burden is on the defendant to prove mitigating factors by a preponderance of the evidence. United States v. Perry, 908 F.2d 56, 58 (6th Cir.), cert. denied, 498 U.S. 1002 (1990). We review the district court's factual findings for clear error, and we accord due deference to the district court's application of the guidelines to the facts. United States v. Nagi, 947 F.2d 211, 215 (6th Cir.1991); cert. denied, --- U.S. ----, 112 S.Ct. 2309 (1992).
 
 
 18
 Bray argues that he deserves to be considered a "minor participant" in the scheme, and relies upon the testimony of Agent Crumbley in support of this proposition. According to the cited testimony, Crumbley communicated solely with Whitmore throughout the undercover sting operation, and Bray overtly participated in only one of the crack deals. Accordingly, Bray argues he was less culpable than Whitmore, and, thus, deserves the downward departure.
 
 
 19
 The finding of "minor participation" is not mandated in every case, and the adjustment is meant only "for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. Sec. 3B1.2, comment. (n. 3). According to United States v. Nagi, 947 F.2d 211 (6th Cir.1991), the mere fact that one defendant may appear less culpable than other defendants does not require the court to award a minor role adjustment. Bray not only was seen with Whitmore on several occasions when drugs were purchased from Whitmore, he actively participated in one of the transactions by handing the drugs over to Agent Crumbley and in another transaction by acting as the lookout. Bray's further participation is evidenced by the fact that he was found to be carrying a substantial portion of marked "buy money" that had been paid to Whitmore to consummate a previous drug transaction.
 
 
 20
 Accordingly, the district court's finding that Bray was not a minor participant, pursuant to U.S.S.G. Sec. 3B1.2, was not clearly erroneous.
 
 AFFIRMED
 
 
 [1]
 The most damaging of these was his claim that he was only in possession of $100, and that he had received this money from his father. A search revealed that he had been lying. He had $980, some of which were "marked" bills from previous drug deals
 
 
 [2]
 Whitmore was getting into the car driven by Bray when the police made their presence known and Whitmore fled
 
 
 [3]
 The fact that Agent Brock subsequently identified Bray as the individual he had seen acting as a lookout at a previous drug transaction and the fact that Patricia Crumbley positively identified Bray once he had been brought to the Task Force office, merely confirm probable cause and do not detract from Sergeant Gunsch's initial justifiable exercise of authority to arrest Bray